UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARVIN D. COTTON,

     Petitioner,

                                  Case Number 07-10291-BC

v.                                      Honorable Thomas L. Ludington

KENNETH McKEE,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Marvin D. Cotton is presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, and has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner was convicted by a jury in the Wayne County Circuit Court of one count of first-degree murder, Mich. Comp. Laws § 750.316, and one count of possession of a firearm in the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b. Petitioner was sentenced to life imprisonment without parole for the first-degree murder conviction and received a consecutive two-year prison term for the felony-firearm conviction. Petitioner alleges that the trial court erroneously denied defense counsel's request for a continuance necessary to prepare for cross-examination of a recently disclosed witness, that Petitioner was deprived of a fair trial because of prosecutorial misconduct, that the sentence of life imprisonment without parole amounts to cruel and

---

[1] When Petitioner filed his petition for writ of habeas corpus, he was incarcerated at the Bellamy Creek Correctional Facility, where Kenneth McKee is the warden. Because the Court is denying this petition, it will not require the caption of the case be amended to reflect that the proper respondent in this case is Jeffery Woods, the warden of Kinross Correctional Facility. *See Logan v. Booker*, No. 2007 WL 2225887, *1 n. 1 (E.D. Mich. Aug. 1, 2007). *See generally Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006) (citing *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996)); *see also* Rule 2(a), 28 foll. U.S.C. § 2254.

unusual punishment, that Petitioner was deprived of the effective assistance of trial and appellate counsel, and that Petitioner was deprived of a fair adjudication of his state post-conviction motion. Respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted, non-cognizable, and lack merit.  The Court agrees that Petitioner's claims are without merit or non-cognizable, therefore, the Court will deny the petition.

I

Petitioner was convicted of the above offenses in the Wayne County Circuit Court following a jury trial with his co-defendant, Anthony T. Legion.  A third co-defendant, Devonte Parks, was to be tried separately, but the charges were ultimately dismissed.  Petitioner and Respondent have provided few facts concerning the case.  Due to the brevity of the petition for writ of habeas corpus, the facts that were raised in Petitioner's state appellate court brief [Dkt. # 18-4], which was included in the Rule 5 materials, have been considered as part of Petitioner's application for a writ of habeas corpus.  *See, e.g.*, *Burns v. Lafler*, 328 F. Supp. 2d 711, 717 n. 2 (E.D. Mich. 2004).  Also considered is the factual summary of the case that was provided by Judge Paul V. Gadola of this District when he granted habeas relief to Petitioner's co-defendant, Anthony T. Legion.  *See Legion v. McKee*, No. 05-CV-40181, 2007 WL 2004918 (E.D. Mich. July 10, 2007).[2]

The charges in this case arose from the murder of Jamond McIntyre in the early morning hours of January 24, 2001.  Kenneth Lockhart testified that he was good friends with the victim. Lockhart indicated that Petitioner occasionally stayed with the victim at a home on Third Street.

---

[2]    Much of this information was obtained from the Internet website for Westlaw, *see* www.westlaw.com, as well as from this Court's docket sheet.  Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice.  *See United States ex. rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).  In addition, a district court is permitted to take judicial notice of its own files and records in a habeas proceeding.  *See Van Woudenberg ex. rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

On the night of January 24, 2001, Lockhart was sleeping at the victim's house.  Lockhart was awakened by the sound of gunshots.  After hearing shots from outside the house, Lockhart got up and retrieved a gun from the master bedroom, before returning to his own room, leaving the door to his room slightly ajar.  Lockhart then observed two men in the house, one of whom was armed with a weapon.  Lockhart positively identified Petitioner's co-defendant, Anthony T. Legion, as one of the two men he saw in the house.  Minutes later, a third individual, whom Lockhart positively identified as Petitioner, entered the house.  Lockhart exited his room and asked the men where the victim was, to which Petitioner replied, "Oh, he straight, kill him," referring to Lockhart.  Lockhart fired his gun once before it jammed, then retreated to his bedroom where he remained until the police arrived on the scene.  At a photographic lineup, Lockhart identified Petitioner, Legion, and Devonte Parks as the three men that he saw in the house.

Santonion Adams, an off-duty Detroit police officer and the victim's cousin, went to the victim's house on the night of the shooting.  After borrowing a van from the victim, Adams returned to the victim's house around 2:00 a.m.  As Adams approached the house, he was talking with the victim on his cell phone.  When Adams pulled into the victim's driveway, he heard the victim call his name and then heard gunshots.  Adams saw two men on the front porch firing guns.  Adams fired several shots from a Glock handgun that he found in the victim's van.  Adams identified a car at the scene as being a green Chrysler Sebring convertible.  At trial, Adams was shown a picture of a green Chrysler Sebring convertible that was owned by Petitioner's mother and positively identified it as the car that he observed at the victim's house on the night of the shooting.

Andre Paul, Petitioner's friend, testified that Petitioner's mother owned a green, convertible Chrysler Sebring.  He identified the same photograph of the car that Adams had identified.  Paul also

testified that he had introduced Petitioner to the victim and that three weeks prior to the shooting, he and Petitioner had visited the victim's house.

Ellis Frazier testified that he was in the Wayne County Circuit Court bull pen awaiting sentencing before Judge Karen Fort Hood, when he spoke to Petitioner, who was in an adjacent holding cell separated by a brick wall. Each cell contained thirty or forty inmates. Frazier claimed that Petitioner asked him for legal advice. Frazier claimed that Petitioner stated that his mother's car was at the scene of a crime and that he had already been identified. Frazier testified that Petitioner told him that he and two accomplices went to the victim's house to rob it. Petitioner told Frazier that someone named "Jay" was supposed to be at the house and that he was the person that they intended to rob. Petitioner indicated that they did not expect Lockhart to be there. Petitioner told Frazier that "Jay" was shot and killed, although he did not identify who did the shooting. Petitioner also told Frazier that he wanted to hurt or kill Lockhart, because he was the only witness who identified Petitioner as being at the crime scene.

The defense called the victim's girlfriend, Lovely Kimble to testify. Kimble was also at the house on the day of the shooting. She testified that she saw three men present at the time of the shooting. On cross-examination from the prosecutor, Kimble acknowledged that Petitioner looked similar to one of the men who was present at the time of the shooting. Kimble testified that she saw a gray-green Chrysler convertible vehicle at the time of the shooting. When shown a photograph of Petitioner's mother's vehicle, Kimble indicated that the car in the photograph was similar to the car that she had observed in front of the victim's house.

During the course of his appeal, appellate counsel received an affidavit from Devonte Parks, dated December 5, 2002. Parks claimed that he had been present in the jail bull pen with Frazier

-4-

when the alleged conversation had taken place between Frazier and Petitioner. Parks denied introducing Petitioner to Frazier or anyone else. Parks indicated that there was no conversation in his presence between Petitioner or anyone else concerning the case. Parks stated that he had passed a polygraph examination that dealt with the issue of whether he was at the victim's home on the night in question. Petitioner's appellate counsel moved for the case to be remanded to the trial court for an evidentiary hearing on a newly discovered evidence claim. The Michigan Court of Appeals denied the motion to remand pursuant to Mich. Ct. R. 7.211(C)(1), because Petitioner had failed to persuade them of the need for a hearing. *People v. Cotton*, No. 238216 (Mich. Ct. App. May 19, 2003).

Petitioner's conviction was affirmed on appeal. *People v. Cotton*, No. 238216 (Mich. Ct. App. Oct. 14, 2003), *leave denied*, 687 N.W.2d 293 (Mich. 2004). Petitioner thereafter filed a motion for relief from judgment pursuant to Mich. Ct. R. 6.500, *et. seq.*, which the trial court denied. *People v. Cotton*, No. 01-003175 (Wayne County Circuit Ct., Sept. 23, 2005). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Cotton*, No. 266453 (Mich. Ct. App. May 17, 2006), *leave denied*, 725 N.W.2d 43 (2006).

Petitioner now seeks the issuance of a writ of habeas corpus on twelve separate grounds[3]:

I. The trial court erroneously denied a continuance when defense counsel requested additional time to prepare for a recently disclosed witness.

II. Prosecutorial misconduct occurred when evidence was introduced that Petitioner threatened to kill a witness.

III. Prosecutorial misconduct occurred when comments were made during the jury selection tending to dilute the burden of proof.

_____

[3] For judicial clarity, the Court will delineate Petitioner's claims in the same manner that Respondent did in his answer to the petition, rather than recite Petitioner's claims verbatim.

IV. Petitioner's mandatory life sentence is cruel and unusual punishment.

V. Ineffective assistance of counsel for failing to call Devonte Parks at trial to impeach Ellis Frazier.

VI. Ineffective assistance of counsel for failing to obtain a hearing to determine whether Devonte Parks would refuse to testify.

VII. Ineffective assistance of appellate counsel for failing to raise claim V in the Michigan Supreme Court.

VIII. Ineffective assistance of appellate counsel for failing to raise claims VI and VII during the appeal of right.

IX. Trial court erred in failing to grant motion for relief from judgment on grounds of ineffective assistance of appellate counsel.

X. Petitioner was denied a hearing in the trial court on his motion for relief from judgment regarding the ineffective assistance of trial counsel claim.

XI. Petitioner was denied a hearing in the trial court on his motion for relief from judgment regarding the ineffective assistance of appellate counsel claim.

XII. Petitioner was denied due process when he was not given a hearing despite fulfilling the procedural requirements for doing so.

## II

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III

## A

Petitioner first contends that the trial court erred in denying his counsel's motion for a continuance because the prosecutor had given him Frazier's written statement only five days before trial. In criminal proceedings, a trial court's denial of a continuance rises to the level of a constitutional due process violation only when there is an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (citations and quotations omitted). In order to obtain habeas relief, a habeas petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.*; *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise would have benefitted the defense." *Powell*, 332 F.3d at 396.

Petitioner is unable to show that he was prejudiced by the trial court's refusal to grant an adjournment of the trial. Defense counsel cross-examined Frazier extensively at trial and seriously

called into question Frazier's credibility.  Defense counsel elicited testimony from Frazier that he

had previously been convicted of armed robbery.  With regards to his alleged conversation with

Petitioner, Frazier acknowledged that he was not in the same bullpen as Petitioner, that there was

a wall between the two bullpens, and that he never saw Petitioner's face.  Frazier admitted that he

did not inform anyone of his alleged conversation with Petitioner when he went into court on his

own case that day, and that he did not report Petitioner's alleged confession until three and a half

months after it had allegedly occurred.  Frazier further admitted that although there were thirty to

forty men in his bullpen at the time of the alleged conversation, he was unaware of any other person

testifying against Petitioner with respect to this conversation.  (Tr. Vol. II 88-109, 120).

In light of the fact that defense counsel was able to effectively cross-examine Frazier about

his alleged conversation with Petitioner, the trial court's denial of a continuance was not objectively

unreasonable.  *See Brown v. O'Dea*, 227 F.3d 642, 645-46 (6th Cir. 2000).  Petitioner is not entitled

to habeas relief on this claim.

B

Second, Petitioner contends that the prosecutor committed misconduct, or that the trial court

violated his rights, by admitting evidence that Petitioner had threatened to kill Kenneth Lockhart,

in violation of Mich. R. Evid. 404(b).[4]  It is well settled that alleged trial court errors in the

application of state procedure or evidentiary law, particularly regarding the admissibility of

---

[4] Respondent contends that this claim, as well as several of Petitioner's other claims, are procedurally defaulted for various reasons.  Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  Because Petitioner's claims lack merit, it is unnecessary to address the procedural default issue.

evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Petitioner's claim that the state court violated Mich. R. Evid. 404(b) by admitting evidence of Petitioner's threat against Lockhart is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).

Moreover, although evidence of other crimes, wrongs, or acts is inadmissible to prove the character of the defendant, such evidence is admissible to prove consciousness of guilt. *United States v. Callan*, 22 F.App'x 434, 444 (6th Cir. 2001). Evidence that a defendant threatened a witness is generally admissible, because it is probative of the defendant's consciousness of guilt. *United States v. Fortson*, 194 F.3d 730, 737 (6th Cir. 1999). Petitioner is not entitled to habeas relief on this claim.

## C

Third, Petitioner contends that the prosecutor denigrated the concept of the presumption of innocence, when he made the following comments during *voir dire*:

-9-

MR. WAGNER:                And the judge has also already indicated that Mr.
                           Cotton and Mr. Legion as they sit before are you [sic]
                           presumed to be innocent, correct?

PROSPECTIVE JURORS:        Yes.

MR. WAGNER:                Now, if I reached into my pocket and I was looking
                           for the mate to this pen and I knew that the only other
                           person that was there was Mr. Hall and I know
                           because I saw him looking at my pen earlier, I know Mr.
                           Hall took my pen earlier, I know Mr. Hall took
                           my pen and in a fit of rage I got upset, I reached over
                           and I grabbed the chair and started pounding him on
                           the head with it, what do you suppose is going to
                           happen, well, besides from hurting him? Probably the
                           deputies would restrain me, correct, and drag me from
                           the courtroom.  And as they dragged me from the
                           court room in front of you, in front of the judge, in
                           front of the court reporter that got me on record
                           saying I was going to kill him and I was just pounding
                           him, well, one day, like Mr. Cotton like, Mr. Legion,
                           I would be sitting in a court room, probably, correct,
                           and a judge would be instructing potential jurors as
                           yourself [sic] that I'm presumed to be what?

PROSPECTIVE JURORS:        Innocent.

MR. WAGNER:                That's right.  So, it doesn't mean that I haven't done
                           anything.  It just means that you cannot consider that
                           until you've heard all of the evidence and the judge
                           tells you to retire to the deliberation room and
                           consider all of the evidence.  Would everyone agree
                           with that?

PROSPECTIVE JURORS:        Yes.

(Tr. Vol. I 84-85).

        "Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512

(6th Cir. 2003)).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct

was "so egregious as to render the entire trial fundamentally unfair" based on the totality of the circumstances. *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*., 4 F.3d at 1355.

When viewed in context, the prosecutor's comments at Petitioner's trial were an accurate reflection of the idea that the presumption of innocence surrounding a defendant in a criminal prosecution continues to operate until overcome by proof of guilt beyond a reasonable doubt. *See United States v. Fleischman*, 339 U.S. 349, 363 (1950). Petitioner is not entitled to habeas relief because the prosecutor did not undermine the concept of the presumption of innocence, particularly in light of the fact that the prosecutor several times emphasized that Petitioner was presumed innocent. *See Bowling v. Parker*, 344 F.3d at 513 (finding that the prosecutor's comment during general *voir dire* in capital murder case, that jury should be neutral, did not undermine presumption of innocence, and thus did not warrant federal habeas relief, where comment had been immediately preceded by remark that defendant was innocent until proven guilty). Finally, the prosecutor's comments concerning the presumption of innocence did not render Petitioner's trial fundamentally unfair in light of the fact that the trial court gave the jury the correct instruction on the presumption of innocence. *See Kellogg v. Skon*, 176 F.3d 447, 451 (8th Cir. 1999). Petitioner is not entitled to habeas relief on this claim.

D

Fourth, Petitioner contends that his sentence of life imprisonment without parole amounts to cruel and unusual punishment and violates Michigan's indeterminate sentencing law, because it is an impermissible determinate sentence. Petitioner's sentence of life imprisonment without parole is within the statutory limits for the offense of first-degree murder. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment either. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). Petitioner's sentence of life imprisonment without parole for first-degree murder does not amount to cruel and unusual punishment so as to entitle him to relief. *See Foster v. Withrow*, 159 F. Supp. 2d 629, 645-46 (E.D. Mich. 2001) (collecting cases).

Michigan's first-degree murder statute authorizes a mandatory nonparolable life sentence. Pursuant to Mich. Comp. Laws § 769.9(1), the Michigan Legislature has determined that the provisions of Michigan's indeterminate sentencing statute do not apply to mandatory life offenses. The Michigan Legislature's determination that the indeterminate sentencing statute shall not apply to mandatory life offenses involves an interpretation of state law that is non-cognizable on federal habeas review. *See Sawyer v. Morgan*, 192 F.App'x 640, 641 (9th Cir. 2006). Because Petitioner's sentence falls within the statutory limits, Petitioner is not entitled to habeas relief on this claim. *Robinson*, 157 F. Supp. 2d at 823.

E

The Court will consolidate Petitioner's fifth, sixth, seventh, and eighth ineffective assistance

-12-

of trial and appellate counsel claims together for judicial clarity.  In *Strickland v. Washington,* 466

U.S. 668 (1984), the Supreme Court established a two-pronged test to determine whether a criminal

defendant has received ineffective assistance of counsel.  First, the convicted person must prove that

counsel's performance was deficient, which "requires showing that counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment."  *Id.* at 687.  Second, the convicted person must show that counsel's deficient

performance prejudiced him.  *Id.*  Prejudice is established by a "showing that counsel's errors were

so serious as to deprive the defendant of a fair trial."  *Id.*  The Supreme Court emphasized that, when

assessing counsel's performance, the reviewing court should afford counsel a great deal of

deference:
> Judicial scrutiny of counsel's performance must be highly deferential.
> It is all too tempting for a defendant to second-guess counsel's
> assistance after conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act or omission of counsel
> was unreasonable.   A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting effects
> of hindsight, to reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's perspective at
> the time.   Because of the difficulties inherent to making the
> evaluation, a court must indulge a strong presumption that counsel's
> conduct falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be considered
> sound trial strategy.

*Id.* at 689 (citations and quotations omitted).  The Supreme Court explained that to establish

deficient performance, a habeas petitioner must identify acts that were "outside the wide range of

professionally competent assistance."  *Id.* at 690.  To satisfy the prejudice prong, a petitioner must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996).

In his fifth and sixth claims, Petitioner contends that his trial counsel was ineffective for failing to call his co-defendant, Devonte Parks, as a witness to impeach Frazier's testimony. Assuming that counsel was deficient in failing to investigate and call Parks as a defense witness, Petitioner is unable to show that he was prejudiced, so as to sustain an ineffective assistance of counsel claim. As discussed in relation to Petitioner's first claim above, defense counsel cross-examined Frazier extensively at trial and significantly impeached Frazier's credibility. Moreover, other evidence admitted at trial incriminated Petitioner.

Kenneth Lockhart positively identified Petitioner as being one of the three men who entered the victim's house on the night of the shooting and who ordered the other men to kill Lockhart. Lovely Kimble testified that one of the men at the victim's house on the night in question resembled Petitioner. Kimble and Santorian Adams testified that they observed a green Sebring convertible outside the victim's home at the time of the shooting. Adams was later shown a picture of Petitioner's mother's green Chrysler Sebring convertible and positively identified it as the car that he observed at the victim's house on the night of the shooting. Andre Paul testified that Petitioner's mother drove a green Sebring convertible and likewise identified the Sebring in the photograph as being the one owned by Petitioner's mother. Kimble indicated that the Sebring convertible in the photograph looked similar to the car that she had observed in front of the victim's house at the time of the shooting.

-14-

Counsel's failure to impeach Frazier's testimony with Parks's testimony did not prejudice Petitioner, in light of the fact Frazier's credibility was impeached by other evidence admitted at trial, and the fact that other evidence incriminated Petitioner. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 677 (E.D. Mich. 2006) (finding that any deficiency by trial counsel in failing to seek a tape recording of informant's statement or to impeach informant with his inmate status did not undermine confidence in the outcome of the case, since a variety of other impeachment evidence was admitted, and other witnesses testified to the same incriminating facts as the informant). Petitioner is not entitled to habeas relief on his fifth and sixth claims.

In his seventh and eighth claims, Petitioner contends that his appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel on his direct appeal after the Michigan Court of Appeals denied his motion to remand. The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). The Supreme Court has held that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Because Petitioner's ineffective assistance of trial counsel claim is without merit, Petitioner is unable to show that appellate counsel's failure to raise this claim on his appeal of right was deficient, and thus fails to establish that he was denied the effective

-15-

assistance of appellate counsel.  *See Coleman v. Metrist*, 476 F. Supp. 2d 721, 733 (E.D. Mich. 2007).

Moreover, to the extent that Petitioner claims that his appellate counsel was ineffective in failing to raise an ineffective assistance of trial counsel claim in his application for leave to appeal to the Michigan Supreme Court, he is not entitled to relief.  A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals.  *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).  "The right to appointed counsel extends to the first appeal of right, and no further."  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Because there is no constitutional right to the effective assistance of counsel on a discretionary appeal, Petitioner cannot claim that counsel was ineffective for failing to raise this claim in his application for leave to appeal with the Michigan Supreme Court.  *Wainwright*, 455 U.S. at 587-88; *Harris v. Stegall*, 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).  Petitioner is not entitled to habeas relief on his fifth, sixth, seventh, or eighth claims.

F

In his ninth, tenth, eleventh, and twelfth claims, Petitioner alleges various defects with his state post-conviction proceedings.  This Court notes that "[t]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review."  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief.  *See Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001).  The reason for this is that the states have no constitutional obligation to provide post-conviction remedies.  *Id.* (citing *Finley*, 481 U.S. at 557).  Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "the essence of habeas corpus is an attack by a person in

-16-

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). Thus, the "scope of the writ" does not encompass a "second tier of complaints about deficiencies in state post-conviction proceedings." *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 248). "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (quotations omitted). Petitioner is not entitled to habeas relief on his ninth, tenth, eleventh, and twelfth claims.

## IV

Based on the above, the Court will deny the petition for writ of habeas corpus. The Court will also deny Petitioner a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that "reasonable jurists could debate whether [or agree that] the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotations omitted). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate

-17-

of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will also deny Petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**, and that Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 20, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 20, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-18-